UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| George W. Lyons, Jr., Alicia L. Sturgess, | : | |
| Mark C. Lyons, Chad M. Lyons, | : | Civil Action No: 3:01 CV1106 (RNC) |
| Daria L. O'Connor, Kent C. Lyons, | : | |
| M. Natica Lyons, M. Elizabeth L. Powers, | : | |
| William C. Lyons, Jr., Timothy P. Lyons, | : | |
| Mark C. Lyons, Trustee of the | : | |
| George W. Lyons, Jr. Family Trust | : | |
| | : | |
| v. | : | |
| | : | |
| The Bilco Company | : | June 21, 2004 |

JOINT TRIAL MEMORANDUM

Pursuant to the Court's Pretrial Order, the parties, acting through the undersigned counsel, submit this Joint Trial Memorandum, and represent that they have conferred for purposes of preparing this submission.

**1.    Trial Counsel.**

Robert A. Harris
Fed. Bar. No. ct06759
Zeldes, Needle & Cooper
Professional Corporation
1000 Lafayette Boulevard
Bridgeport, CT  06604
Telephone:  (203) 333-9441

Maurice T. FitzMaurice, Esq.
Fed. Bar. No. ct04302
Reid and Riege, P.C.
One Financial Plaza
Hartford, CT 06103-3185
Telephone: (860) 278-1150

**2.     Jurisdiction.**

This Court has jurisdiction over the First Count pursuant to 28 U.S.C. §1331 and has supplemental jurisdiction over the remaining counts pursuant to 28 U.S.C. §1367, in that these claims are so related to the claim asserted in the First Count that they form part of the same case or controversy under Article III of the United States Constitution.

**3.     Jury/Non-jury.**

This is a jury case.

**4.     Nature of Case.**

The First Count asserts securities fraud pursuant to 15 U.S.C. §78j, based on allegations that defendant induced plaintiffs to sell their shares in defendant and to purchase shares in Fairfax Properties, Inc. based upon material misrepresentations and concealments.   Plaintiffs seek money damages and rescission of the underlying transaction

The Second Count asserts securities fraud pursuant to Connecticut General Statutes §36b-29(a)(2), based on the aforementioned allegations. Plaintiffs seek money damages, rescission of the underlying transaction, and attorneys' fees pursuant to Connecticut General Statutes §36b-29

The Third Count asserts common law fraud based on the aforementioned allegations.   Plaintiffs seek money damages, rescission of the underlying transaction, and punitive damages for fraud.

The Fourth Count asserts on behalf of plaintiff George W. Lyons, Jr. a

2

claim of breach of contract and the duty of good faith and fair dealing implied therein, based on allegations that defendant implemented trivial and unnecessary revisions to various products for the sole purpose of avoiding contractual royalty obligations to Mr. Lyons. Plaintiff Lyons seeks money damages and the imposition of a constructive trust in an amount equal to his share of royalties to which he is entitled.

The Fifth Count asserts on behalf of plaintiff George Lyons, Jr. a claim that defendant engaged in unfair and deceptive trade practices in violation of Connecticut General Statutes §§42-110b et seq., by virtue of its conduct in connection with its attempt to avoid its royalty payment obligations. Plaintiff Lyons seeks money damages, the imposition of a constructive trust in an amount equal to his share of royalties to which he is entitled, and attorneys' fees and punitive damages pursuant to Connecticut General Statutes §42-110g.

**5.    Stipulations of Fact and Law.**

1.    Until June 21, 1999, plaintiffs were shareholders in defendant The Bilco Company ("Bilco"). Bilco was a family business formed by George W. Lyons, Sr. Bilco's business encompassed manufacturing operations, and a wholly owned subsidiary (Fairfax Properties, Inc.) that was involved in real estate development.

2.    The patent pool agreement required the payment of royalties if the product embodied any patent encompassed by the patent pool, even if the patent had expired under law.

3.    On June 21, 1999, the Bilco shareholders proceeded to "split

3

off" Bilco's real estate subsidiary (Fairfax Properties, Inc.) from Bilco.  However,

the shareholders agreed that the patent pool agreement would remain in place,

and the patent pool participants entered into an agreement captioned Fifth

Supplemental Agreement to Agreement for Sale of Certain Inventions.

   4.    At the June 21, 1999 closing, Bilco provided plaintiffs,

including George W. Lyons, Jr., with schedules identifying the patents covered by

the patent pool, and identifying the products that embodied particular patents.

   5.    Bilco's obligation to pay royalties under the patent pool

agreement was a liability of the company, and impacted the value of the shares

of the company.

   6.    The roof scuttle products encompassed the following three

patents invented by the patent pool members:

- "Support Means for Hinged Covers" (patent #2,939,738)

- "Support Member for Hatch Cover Lift Cylinders" (patent #4,145,843)
- "Roofing Membrane to Roof Opening" (patent #4,941,300)

   7.    The removal of two of the patents from the roof scuttle

products would not have avoided the requirement that Bilco pay royalties,

because the inclusion of any patent designed by the patent pool members was

sufficient to trigger the royalty requirement.

   8.    Several plaintiffs, including George W. Lyons, Jr., Mark C.

Lyons, and William C. Lyons, Jr., are citizens of Connecticut.

   9.    Bilco is a Connecticut corporation that maintains its principal

place of business in West Haven, CT.

4

10.   The company was founded more than seventy-five years ago by  George W. Lyons, Sr., who died in 1988.

11.   George W. Lyons, Sr. had five sons, a daughter, and forty-three grandchildren.

12.   For many years, George W. Lyons, Sr. and his sons managed the company in relative harmony, and the company prospered.

13.   Beginning about ten years ago, however, dissension arose between two groups of second and third generation family members over issues of corporate governance and business emphasis.

14.   This dissension led to prolonged negotiations resulting in the execution of a Settlement and Reorganization Agreement dated June 21, 1999

15.   Negotiations leading to the June 21, 1999 Agreement began by early 1998.

16.   Three Lyons families, those of George W. Lyons, Jr., Edward F. Lyons and William C. Lyons, Sr., were known as the Settling Shareholders.

17.   The three other Lyons families, those of Robert J. Lyons, Sr., John M. Lyons and Dorothy J. Berg, were known as the Remaining Shareholders.

18.   Pursuant to the 1999 Agreement, the Settling Shareholders agreed to sell their stock to Bilco in exchange for shares of a Bilco real estate subsidiary, Fairfax Properties, Inc., and cash.

19.   The Remaining Shareholders agreed to own and operate the

5

traditional Bilco manufacturing business.

20.    The Plaintiffs include members of the family of George W. Lyons, Jr.

21.    The Plaintiffs also include two members of the family of William C. Lyons, Sr., William C. Lyons, Jr., and Timothy Lyons.

22.    To facilitate communication among the Settling Shareholders, the three Settling Shareholder families formed a Steering Committee in 1998.

23.    Each family of the Settling Shareholders was represented on the Steering Committee.

24.    The members of the Steering Committee included George W. Lyons, Jr., Mark C. Lyons, William Lyons, Sr., William C. Lyons, Jr., Timothy Lyons, Christopher Lyons, and Edward F. Lyons.

25.    The Steering Committee members, in turn, communicated with members of their own families.

26.    In 1950, George W. Lyons, Sr. and his five sons entered into an agreement to assign patents obtained by them to Bilco in exchange for a payment to a Patent Pool, owned by George W. Lyons, Sr. and his five sons. (Ex. TT)

27.    This 1950 Agreement and the amendments to that agreement are known as the "Patent Pool Agreement" ("PPA").

28.    The PPA, as originally drafted and as amended over the years, restricted ownership to George W. Lyons, Sr. and his five sons.

6

29.     Only patents obtained by George Lyons, Sr. and his five sons  were assigned to the Pool, and payments from the Pool were made only to them.

30.    Upon George Lyons, Sr.'s death in 1988, ownership of the Patent Pool passed to his five sons.

31.    Under the PPA, Bilco is required to make payments to the Patent Pool equal to five percent of the sales price of all Bilco products sold that embody the technology of the patents assigned to the Patent Pool.

32.     Under the PPA, Bilco is required to make payments to the Patent Pool on all products sold that embody the technology of a patent whether or not the patent has expired.

33.     If, in 2002, Bilco sells a product which embodies the technology of a 1955 Patent, Bilco must pay the Pool five percent of the sales price of the product even though the patent expired long ago.

34.     If, in 2002, Bilco sells a product which embodies the technology of a 1955 Patent, Bilco must pay the Pool five percent of the sales price of the product even though competitors may use the patent technology without charge.

35.     Over the years, the PPA proved to be very profitable to the owners of the Patent Pool.

36.     In 1998, for example, Bilco paid to the Patent Pool approximately $1.6 Million, or approximately $320,000 for each of the five owners.

7

37.    In 1998, the Patent Pool was owned by George W. Lyons, Sr.'s five sons, George W. Lyons, Jr., Edward F. Lyons, Robert J. Lyons, William C. Lyons and John M. Lyons.

38.    The Patent Pool owners were also Directors of Bilco.

39.    Except for a period of approximately ten months in 1995, the Patent Pool owners were Directors of Bilco from the 1950s until the 1999 Agreement.

40.    During this period, the Patent Pool owners constituted a majority of the Bilco Board of Directors.

41.    PPA was amended several times over the years.

42.    Certain amendments made substantive changes.

43.    The 1950 Agreement and the Amendments are listed in the succeeding paragraphs.

44.    Exhibit TT is  a true and accurate copy of an agreement dated August 7, 1950 between The Bilco Company and George W. Lyons, Sr., George W. Lyons, Jr., Edward F. Lyons, Robert J. Lyons, William C. Lyons and John M. Lyons.[1]

45.    Exhibit UU is a  true and accurate copy of  an agreement titled "Agreement of Ownership of Certain Inventions" dated October 1, 1958 among George W. Lyons, Sr., George W. Lyons, Jr., Edward F. Lyons, Robert J. Lyons, William C. Lyons and John M. Lyons.

46.    Exhibit VV is a true and accurate copy of an  agreement

---

[1] The references are to the exhibits defendant included with its summary judgment submission.

titled "Agreement of Sale of Certain Inventions" dated October 1, 1958 between The Bilco Company and George W. Lyons, Sr., George W. Lyons, Jr., Edward F. Lyons, Robert J. Lyons, William C. Lyons and John M. Lyons.

47.    Exhibit WW is a true and accurate copy of an agreement titled "First Amendment to Agreement of Ownership of Certain Inventions and Related Matters" dated August 3, 1962 among George W. Lyons, Sr., George W. Lyons, Jr., Edward F. Lyons, Robert J. Lyons, William C. Lyons and John M. Lyons.

48.    Exhibit XX is a true and accurate copy of an agreement titled "Supplemental Agreement to Agreement of Ownership of Certain Inventions" dated October 1, 1965 among George W. Lyons, Sr., George W. Lyons, Jr., Edward F. Lyons, Robert J. Lyons, William C. Lyons and John M. Lyons.

49.    Exhibit YY is a true and accurate copy of an agreement titled "Supplemental Agreement to Agreement of Sale of Certain Inventions" dated October 1, 1965 between The Bilco Company and George W. Lyons, Sr., George W. Lyons, Jr., Edward F. Lyons, Robert J. Lyons, William C. Lyons and John M. Lyons.

50.    Exhibit ZZ is a true and accurate copy of an agreement titled "Second Supplemental Agreement to Agreement of Ownership of Certain Inventions" dated June 4, 1981 among George W. Lyons, Sr., George W. Lyons, Jr., Edward F. Lyons, Robert J. Lyons, William C. Lyons and John M. Lyons.

51.    Exhibit AAA is a true and accurate copy of an agreement

9

titled "Second Supplemental Agreement to Agreement of Sale of Certain Inventions" dated June 4, 1981 between The Bilco Company and George W. Lyons, Sr., George W. Lyons, Jr., Edward F. Lyons, Robert J. Lyons, William C. Lyons and John M. Lyons.

52.     Exhibit BBB is a true and accurate copy of  an agreement titled "Third Supplemental Agreement to Agreement of Ownership of Certain Inventions" dated September 12, 1984 among George W. Lyons, Sr., George W. Lyons, Jr., Edward F. Lyons, Robert J. Lyons, William C. Lyons and John M. Lyons.

53.     Exhibit CCC is a true and accurate copy of  an agreement titled "Third Supplemental Agreement to Agreement of Sale of Certain Inventions" dated September 12, 1984 between The Bilco Company and George W. Lyons, Sr., George W. Lyons, Jr., Edward F. Lyons, Robert J. Lyons, William C. Lyons and John M. Lyons.

54.     Exhibit DDD is a true and accurate copy of  an agreement titled "Assignment" dated June 18, 1991 by which the Executors of the Estate of George W. Lyons, Sr. assigned his interest in the Patent Pool to George W. Lyons, Jr., Edward F. Lyons, Robert J. Lyons, William C. Lyons and John M. Lyons.

55.     Exhibit EEE is a true and accurate copy of  an agreement titled "Fourth Supplemental Agreement to Agreement of Ownership of Certain Inventions" dated September 1, 1994 among George W. Lyons, Sr., George W.

Lyons, Jr., Edward F. Lyons, Robert J. Lyons, William C. Lyons and John M. Lyons.

56.    Exhibit FFF is a true and accurate copy of an agreement titled "Fourth Supplemental Agreement to Agreement of Sale of Certain Inventions" dated September 1, 1994 between The Bilco Company and George W. Lyons, Jr., Edward F. Lyons, Robert J. Lyons, Sr., William C. Lyons, Sr. and John M. Lyons.

57.    Exhibit GGG is a true and accurate copy of an agreement titled "Fifth Supplemental Agreement to Agreement for Sale of Certain Inventions" dated May 24, 1999 between The Bilco Company and George W. Lyons, Jr., Edward F. Lyons, Robert J. Lyons, Sr., William C. Lyons, Sr. and John M. Lyons.

58.    The Patent Pool payments created an estate tax planning issue for the Patent Pool owners.

59.    In 1994, the Pool owners and Bilco executed the "Fourth Supplemental Agreement to Agreement of Sale of Certain Inventions" ("Fourth Amendment") to the PPA.

60.    The Fourth Amendment provides:

[Bilco] may proceed to implement research and product development capabilities independent of those previously provided by [Pool owners]. In the event that future inventions or product improvements result in products being manufactured by [Bilco] which no longer embody inventions described in Paragraph 1, [Bilco] shall have no obligation to make any payments to [Pool owners] with respect to such products. In the event that future inventions result in products being manufactured by [Bilco] which embody both such future inventions and inventions described in

11

Paragraph 1, no reduction shall be made in the payments due to [Pool owners] as the result of the addition of such future inventions.

61.    After the Fourth Amendment was executed in 1994, Bilco proceeded to obtain new patents that were not included in the Patent Pool.

62.    The issuance of United States Patent 5,960,596 did not reduce Bilco's liability to the Patent Pool by any amount.

63.    Bilco's use of the technology described in United States Patent 5,960,596 did not reduce Bilco's liability to the Patent Pool by any amount.

64.    After the issuance of United States Patent 5,960,596, Bilco was required to pay to the Patent Pool royalties on the "Bilclip" patent that was issued in 1991.

65.    For a period of time after the issuance of United States Patent 5,960,596, Bilco paid to the Patent Pool royalties on the "Bilclip" patent that was issued in 1991.

66.    After the issuance of United States Patent 5,960,596, Bilco was required to pay to the Patent Pool royalties on all products for which it paid royalties prior to the 1999 Agreement.

67.    The issuance of United States Patent 6,021,606 did not immediately reduce Bilco's liability to the Patent Pool.

68.    After the issuance of  United States Patent 6,021,606, Bilco was still required to pay, and did pay, royalties on all products for which it paid royalties prior to the 1999 Agreement until additional changes were made in those products.

12

69.     United States Patent 6,021,606 did replace a patent for a similar product sold by Bilco, but additional changes in the product were necessary to reduce Bilco's Patent Pool liability.  (Ex. OOO ¶¶ 12–13)

70.     By letter dated March 30, 2001 (Ex. HHH), George W. Lyons, Jr. was informed that Bilco would "be marketing several revised products."

71.     Exhibit HHH attached is a true and accurate copy of a letter dated March 30, 2001 authored by Robert J. Lyons, Sr. and mailed to George W. Lyons, Jr.

72.     By letter dated March 30, 2001, (Ex. HHH) George W. Lyons, Jr., received notice of a reduction of future payments under the Patent Pool.

73.     By letter dated April 27, 2001, (Ex. III) George W. Lyons, Jr. was told that Bilco had terminated the use of  "Pat. #2,939, 738, Pat. #4,145,843, and Pat. #4,941,300."

74.     Exhibit III attached is a true and accurate copy of a letter dated April 27, 2001 authored by Robert J. Lyons, Sr. and mailed to George W. Lyons, Jr.

75.     Exhibit J attached is a true and accurate copy of a document that was provided by Bilco to Plaintiffs on or before June 21, 1999.

76.     Exhibit K attached is a true and accurate copy of a document provided by Plaintiffs on or before June 21, 1999.

77.     The list included thirty-six United States patents.

13

78.    The second schedule, entitled "Products Currently Sold By Bilco That Embody one or More Patents Applicable to Agreement of Sale of Certain Inventions Through Fifth Supplement Agreement As of June 21, 1999" (Ex. J), identified Bilco products that embodied the technology of United States patents as of June 21, 1999.

79.    The second schedule (Ex. J) included ten United States patents.

80.    Exhibit B attached is a true and accurate copy of the May 1998 Bilco report to shareholders.

81.    In Bilco's 1998 Report to Shareholders (Ex. B), Bilco wrote: "Product development continued during 1997 with four new patents applied for in early 1998."

82.    In Paragraph 13.2(d) of the 1999 Agreement, the Plaintiff George Lyons, Jr. represented:

> Such Shareholder is entering into and will enter into this Agreement and the Transaction Documents to which such Shareholder is or will be a party based solely upon such Shareholder's respective evaluation of the information described above, the representations, warranties and other obligations of the other parties expressly set forth in this Agreement and the Transaction Documents and the advice of such Shareholder's professional advisors, and not based on any statement, representations, warranty or promise by:  (A) any employee, agent or advisor (including without limitation R&R, E&Y and the Fairfax Accountant) of Bilco, Hallock, Bilco UK or Fairfax; or (B) any agent or advisor of any other Shareholder (including without limitation SOSZ where the Shareholder making this representation and warranty is a Party Remaining Shareholder, and DBH where the Shareholder making this representation and warranty is a Party Settling Shareholder).

83.    In Paragraph 13.2(d) of the 1999 Agreement, Plaintiff

14

William Lyons, Jr. represented:

> Such Shareholder is entering into and will enter into this Agreement and the Transaction Documents to which such Shareholder is or will be a party based solely upon such Shareholder's respective evaluation of the information described above, the representations, warranties and other obligations of the other parties expressly set forth in this Agreement and the Transaction Documents and the advice of such Shareholder's professional advisors, and not based on any statement, representations, warranty or promise by: (A) any employee, agent or advisor (including without limitation R&R, E&Y and the Fairfax Accountant) of Bilco, Hallock, Bilco UK or Fairfax; or (B) any agent or advisor of any other Shareholder (including without limitation SOSZ where the Shareholder making this representation and warranty is a Party Remaining Shareholder, and DBH where the Shareholder making this representation and warranty is a Party Settling Shareholder).

(Ex. A)

84.    The 1999 Agreement required Shareholder approval.

85.    Each Plaintiff Shareholder voted to approve the 1999 Agreement.

86.    Each of the Plaintiff Shareholders executed a "Bilco Shareholder Consent and Waiver".

87.    Exhibit LLL is a true and accurate copy of a Bilco Shareholder Consent and Waiver.

88.    Each plaintiff Shareholder made the following representation in Exhibit LLL:

> I have directly or indirectly through one or more immediate family members on whom I am relying, had the opportunity to participate in the discussions leading to the execution of Settlement Agreement and been given full access to all financial and other information pertaining to Bilco, its subsidiaries and the transactions contemplated by the Settlement Agreement that I have requested. In deciding to abide by the vote of the Class B Shareholders, I am relying solely on my own evaluation of this information and the

00961.001/362758.1

representations and warranties of the parties expressly set forth in the Settlement Agreement and the Transaction Documents, following consideration of the same with such immediate family members and such professional advisors as I have elected to retain and consult.   In making this decision I am <u>NOT</u> relying on any statement, representation, warranty or promise by:  (a) Bilco or any of its subsidiaries not set forth in the Settlement Agreement; (b) any employee, agent or advisor (including without limitation Reid and Riege, P.C., Ernst & Young or Finer, Chasse & Marcarelli) of Bilco or any of its subsidiaries;  or (B) any agent or advisor of any other Shareholder of Bilco (including without limitation Siegel, O'Connor, Schiff & Zangari, P.C. or Day, Berry & Howard LLP) unless I have specifically engaged such agent or advisor on my behalf.

89.     Exhibit R attached is a true and accurate copy of a the first page of a letter dated December 3, 1996 by Duff & Phelps sent to Attorney Andrew Howat.

90.     Mark Lyons received a Bachelor of Arts Degree from the University of Pennsylvania in 1972, and an EMBA from the University of New Haven in 1995.

91.     After Exhibit X was written, Kosowsky was not asked to revalue the Patent Pool liability before the 1999 Agreement was signed.

92.     In April 14, 1999, William C. Lyons, Jr. wrote Exhibit BB.

93.     Exhibit BB was sent to Attorney Zangari on or about April 14, 1999.

94.     Prior to June 21, 1999, William C. Lyons, Jr. recognized the risk that, after the execution of the June 1999 Agreement, Bilco would seek to reduce Patent Pool payments by designing out of the patents.

95.     Exhibit I attached is a true and accurate copy of a chart dated October 16, 1998 prepared by George W. Lyons, Jr.

16

96.     Exhibit M attached is a true and accurate copy of a letter dated December 20, 1996 authored by four Patent Pool owners: John Lyons, Robert Lyons, Sr., Edward Lyons and William Lyons, Sr. and mailed to George W. Lyons, Jr.

97.     Exhibit O attached is a true and accurate copy of a letter dated June 8, 1999 authored by Attorney John Nolan and sent by fax to Attorney Robert Harris.

98.     Exhibit P attached is a true and accurate copy of a letter dated June 9, 1999 authored by Attorney Robert Harris and sent by mail and fax to Attorney John Nolan.

99.     Exhibit Q attached is a true and accurate copy of a letter dated February 2, 1998 authored by Attorney Mario Zangari and sent by fax to Attorney John Nolan.

100.    On or about March 25, 1998, Plaintiff William Lyons, Jr. wrote on Exhibit R: "Why do I feel ripped off?  Bill".

101.    On or about March 25, 1998, Plaintiff William Lyons, Jr. faxed Exhibit R to Attorney Mario Zangari.

102.    Exhibit S attached is a true and accurate copy of a Bilco Shareholder Consent and Waiver executed by Plaintiff George W. Lyons, Jr. Bilco Shareholder Consent and Waiver agreements also were executed by all other Plaintiffs in this action.

103.    Exhibit LLL is a Bilco Shareholder Consent and Waiver that

17

was executed by Plaintiff Alicia L. Sturgess "to facilitate the settlement and reorganization contemplated by the [June 21, 1999] Settlement Agreement."

104.    Exhibit LLL is a Bilco Shareholder Consent and Waiver that was executed by Plaintiff Mark C. Lyons "to facilitate the settlement and reorganization contemplated by the [June 21, 1999] Settlement Agreement."

105.    Exhibit LLL is a Bilco Shareholder Consent and Waiver that was executed by Plaintiff Chad M. Lyons "to facilitate the settlement and reorganization contemplated by the [June 21, 1999] Settlement Agreement."

106.    Exhibit LLL is a Bilco Shareholder Consent and Waiver that was executed by Plaintiff Daria L. O'Connor "to facilitate the settlement and reorganization contemplated by the [June 21, 1999] Settlement Agreement."

107.    Exhibit LLL is a Bilco Shareholder Consent and Waiver that was executed by Plaintiff Kent C. Lyons "to facilitate the settlement and reorganization contemplated by the [June 21, 1999] Settlement Agreement."

108.    Exhibit LLL is a Bilco Shareholder Consent and Waiver that was executed by Plaintiff M. Natica Lyons "to facilitate the settlement and reorganization contemplated by the [June 21, 1999] Settlement Agreement."

109.    Exhibit LLL is a Bilco Shareholder Consent and Waiver that was executed by Plaintiff Elizabeth L. Powers "to facilitate the settlement and reorganization contemplated by the [June 21, 1999] Settlement Agreement."

110.    Exhibit LLL is a Bilco Shareholder Consent and Waiver that was executed by Plaintiff William C. Lyons, Jr. "to facilitate the settlement and reorganization contemplated by the [June 21, 1999] Settlement Agreement."

18

111.   Exhibit LLL is a Bilco Shareholder Consent and Waiver that was executed by Plaintiff Timothy P. Lyons "to facilitate the settlement and reorganization contemplated by the [June 21, 1999] Settlement Agreement."

112.   Exhibit LLL is a Bilco Shareholder Consent and Waiver that was executed by Plaintiff Mark C. Lyons, Trustee of the George W. Lyons, Jr. Family Trust "to facilitate the settlement and reorganization contemplated by the [June 21, 1999] Settlement Agreement."

113.   Exhibit GG attached is a true and accurate copy of a letter dated March 2, 1999 authored by "The Steering Committee" to the Settling Shareholders.

114.   Exhibit LL attached is a true and accurate copy of a fax cover sheet dated May 3, 1999 from Attorney Mario Zangari to Attorney John Nolan attaching a copy of the Fifth Supplemental Agreement to Agreement of Sale of Certain Inventions.

115.  United States Patent number 5,960,596 was issued to Robert Lyons, Sr. and assigned to The Bilco Company.

116.   United States Patent number 6,021,606 was issued to Jacob J. Kos and assigned to The Bilco Company.

117.   Exhibit I attached is a true and accurate copy of a chart dated October 16, 1998 prepared by George W. Lyons, Jr.

118.   Exhibit MMM attached is a true and accurate copy of a fax cover sheet dated May 3, 1999 from Attorney Mario Zangari to J. Nolan, Esq.,

attaching a draft of the Fifth Supplemental Agreement to Agreement for Sale of Certain Inventions (rev. 5/03/99).

119.    Bilco's use of United States Patent No. 5,960,596 or its technology would require that Bilco make a payment to the Patent Pool.

120.    United States Patent No. 6,021,606 was issued to Jacob Kos and assigned to Bilco.

121.    Bilco's ownership of the Kos patent, United States Patent No. 6,021,606 and the technology embodied in that patent, did not immediately reduce Bilco's liability to the Patent Pool.

122.    From the 1950s until the 1999 Agreement, the five sons of George W. Lyons, Sr. were members of the Bilco Board of Directors, except for a period of approximately ten months during 1995.

123.    At all times when the five sons of George W. Lyons, Sr. were members of the Bilco Board of Directors, they constituted a majority of the Board.

124.    During that ten-month period in 1995, the Bilco Board of Directors consisted of six members of the third generation of the Lyons family; that Board was known as the "Cousins' Board."

125.    Concurrent with the execution of the 1999 Agreement, three of George W. Lyons, Sr.'s five sons resigned from the Bilco Board of Directors.

126.    Exhibit PPP attached is a true and accurate copy of the first page and pages 13 through 15 of the Deposition of Mark Lyons, taken on May 29, 2002.

127.    These Patent Pool payments have received favorable tax

20

treatment.

128.    The IRS has allowed the Patent Pool owners to treat the payments as a capital gain and has allowed Bilco to expense the payment.

129.    Prior to June 21, 1999, Plaintiffs understood that, over the years, patents in the Patent Pool became obsolete as new technology emerged.

130.    Exhibit CC attached is a true and accurate copy of a memorandum dated March 27, 1999 authored by George W. Lyons, Jr.

131.    Plaintiffs, either directly or through Attorney Zangari, retained J. Allen Kosowsky, CPA ("Kosowsky") as a financial advisor in late 1997 or early 1998.

132.    Exhibit T attached is a true and accurate copy of a letter dated March 23, 1998 authored by J. Allen Kosowsky mailed to Attorney Mario Zangari.

133.    Exhibit U attached is a true and accurate copy of a two-page document dated May 2, 1998 authored by Mark Lyons.

134.    Exhibit X attached is a true and accurate copy of a fax dated March 16, 1999 from Mark C. Lyons addressed to Attorney Mario Zangari.

135.    On March 16, 1999, Mark Lyons authored Exhibit X.

136.    Exhibit HH attached is a true and accurate copy of a memorandum dated March 17, 1999 authored by George W. Lyons, Jr.

137.    On or about May 24, 1999, Mark Lyons wrote Exhibit H.

138.    Exhibit H attached is a true and accurate copy of a set of notes dated May 24, 1999 authored by Mark C. Lyons.

21

139.    Exhibit L attached is a true and accurate copy of an analysis dated June 2, 1999 prepared by Mark C. Lyons.

140.    Prior to June 21, 1999, Mark Lyons recognized the risk that, after the execution of the 1999 Agreement, Bilco would seek to reduce Patent Pool payments by designing out of the patents.

141.    Prior to June 21, 1999, Attorney Zangari recognized the risk that, after the execution of the June 1999 Agreement, Bilco would seek to reduce Patent Pool payments by designing out of the patents.

142.    Prior to June 21, 1999, the Plaintiff Shareholders recognized the risk that, after the execution of the June 1999 Agreement, Bilco would seek to reduce Patent Pool payments by designing out of the patents.

143.    Exhibit V is a memorandum prepared by Attorney Robert F. Cohn on March 11, 1999, addressed to Attorney Zangari.

144.    Exhibit V attached is a true and accurate copy of a memorandum dated March 11, 1999 authored by Attorney Robert F. Cohn addressed to Attorney Mario Zangari.

145.    Exhibit W is a letter authored by Attorney Mario Zangari on or about March 12, 1999 that was mailed to George W. Lyons, Jr.

146.    Exhibit W attached is a true and accurate copy of a letter dated March 12, 1999 authored by Attorney Mario Zangari and mailed to George W. Lyons Jr.

22

147.   Exhibit Y attached is a true and accurate copy of the same fax as in Exhibit X but shows that Exhibit X was faxed to Attorney Zangari on or about March 16, 1999.

148.   Exhibit Y shows that Exhibit X was faxed to Attorney Zangari on or about March 16, 1999.

149.   Exhibit Z is a memorandum prepared by Attorney Robert F. Cohn on March 17, 1999, addressed to Attorney Zangari.

150.   Exhibit Z attached is a true and accurate copy of a memorandum dated March 17, 1999 authored by Attorney Robert F. Cohn addressed to Attorney Mario Zangari.

151.   At the time Exhibits V and Z were prepared, Attorney Cohn and Attorney Zangari were employed by the same law firm, Siegel, O'Connor, Schiff & Zangari, P.C.

152.   Exhibit AA is a letter authored by Attorney Mario Zangari on March 19, 1999.

153.   Exhibit II attached is a true and accurate copy of a fax cover sheet dated March 31, 1999 from Attorney Mario Zangari to Mark C. Lyons attaching a draft of the Fifth Supplemental Agreement to Agreement for Sale of Certain Inventions (rev. 3/31/99).

154.   Exhibit JJ attached is a true and accurate copy of a fax cover sheet dated April 5, 1999 from Attorney Mario Zangari to William C. Lyons, Sr., Edward Lyons and Mark C. Lyons attaching a draft of the Fifth Supplemental Agreement to Agreement for Sale of Certain Inventions (rev. 3/31/99).

23

155.    Paragraph 12 of Exhibit JJ read:

The parties agree that paragraph 2(c) of the FOURTH
SUPPLEMENTAL AGREEMENT TO THE AGREEMENT OF SALE
OF CERTAIN INVENTIONS dated September 1, 1994, is hereby
deemed null and void and of no further effect.

156.    Exhibit U is a two-page document prepared on or about May 2, 1998 by Mark C. Lyons.

157.    On May 2, 1998, William Lyons faxed Exhibit U to Attorney Zangari.

158.    Exhibit AA is a letter authored by Attorney Mario Zangari on March 19, 1999 and mailed to George W. Lyons, Jr.

159.    Exhibit CC is a memorandum prepared by Plaintiff George W. Lyons, Jr. on or about March 27, 1999.

160.    Exhibit CC was faxed to Plaintiff Mark C. Lyons on or about March 27, 1999.

161.    Exhibit CC was sent to Attorney Zangari prior to June 21, 1999.

162.    Exhibit EE attached is a true and accurate copy of a fax cover sheet dated February 3, 1999 from Attorney Mario Zangari to George W. Lyons, Jr., William C. Lyons, Sr., William C. Lyons, Jr., Mark C. Lyons, Tim Lyons and Chris Lyons accompanying an "Outline of Administrative and Legal Issues After Completion of Lyons Term Sheet."

24

163.    Exhibit FF attached is a true and accurate copy of a memorandum dated February 3, 1999 authored by Christine Barker of Siegel O'Connor Schiff & Zangari to Attorney Mario Zangari.

164.    Exhibit HH is a memorandum authored by George W. Lyons, Jr. on or about March 17, 1999.

165.    Exhibit II is a fax cover sheet from Attorney Zangari dated March 31, 1999 to Mark C. Lyons attaching a draft of the Fifth Supplemental Agreement to Agreement for Sale of Certain Inventions (rev. 3/31/99).

166.    Exhibit JJ is a fax cover sheet from Attorney Zangari dated April 5, 1999 to William C. Lyons, Sr., Edward Lyons, and Mark C. Lyons attaching a draft of the Fifth Supplemental Agreement to Agreement for Sale of Certain Inventions (rev. 3/31/99).

167.    Exhibit KK attached is a true and accurate copy of a memorandum dated April 23, 1999 authored by Mark C. Lyons and sent by email to Attorney Mario Zangari and William C. Lyons, Jr.

168.    Exhibit MM attached is a true and accurate copy of an outline dated May 18, 1999 authored by Mark C. Lyons.

169.    Exhibit NN attached is a true and accurate copy of a letter dated May 20, 1999 authored by Attorney Mario Zangari and mailed to Attorney Robert A. Harris and to Mark C. Lyons.

170.    Exhibit OO attached is a true and accurate copy of a letter dated May 20, 1999 authored by Attorney Mario Zangari and mailed to Attorney David L. Reynolds.

25

171.    Exhibit PP attached is a true and accurate copy of a note dated May 27, 1999 authored by George W. Lyons Jr. and faxed to Attorney Mario Zangari.

172.    Exhibit QQ attached is a true and accurate copy of a note dated May 28, 1999 authored by Mark C. Lyons and faxed to Attorney Mario Zangari.

173.    Exhibit NNN attached is a true and accurate copy of an e-mail dated April 23, 1999, from Mark Lyons to Attorney Zangari.

**6.    Plaintiffs' Contentions.**

The First, Second and Third Counts are predicated on the factual contention that plaintiffs' June 21, 1999 sale of their shareholder interests in defendant, and purchase of a 43% interest in defendant's wholly owned subsidiary, Fairfax Properties, Inc. was predicated upon materially false representations and omissions made by defendant regarding the value of defendant and the magnitude of its liabilities.  In particular, plaintiffs contend that the value of defendant was materially understated by virtue of defendant's actions in overstating the magnitude of its liability under a "patent pool" agreement and the amendments thereto, which required it to pay royalties equal to five percent of the gross revenues defendant received from the sale of products that embodied patents encompassed by the patent pool.  Defendant intentionally withheld and concealed from plaintiffs that, prior to June 21, 1999, defendant had commenced a course of conduct that was intended to achieve the

26

elimination of the royalty obligation on products with annual sales volume in excess of $15,000,000.

The Fourth and Fifth Counts are asserted by George W. Lyons, Jr., who is a participant in the aforementioned "patent pool", predicated on the factual contention that, subsequent to the June 21, 1999 transaction, defendant substantially and unlawfully reduced the payment of royalties to Mr. Lyons by making a series of cosmetic, immaterial and unnecessary changes to its products, which served no legitimate commercial purpose, but rather were implemented for the express purpose of depriving Mr. Lyons of the benefit of his contractual bargain.

**7.    Defendant's Contentions.**

<u>Counts One, Two, & Three</u>

Plaintiffs' fraud claims in Counts One (Section 10(b) of the Securities and Exchange Act) and Two (Section 36b-29 of the Connecticut Uniform Securities Act) are barred by the one-year statute of limitation.  Plaintiffs' claims related to Bilco's alleged failure to disclose its product redesign are time-barred because Plaintiffs either: (i) knew; or (ii) had inquiry notice well before the 1999 Agreement that Bilco was redesigning its products.  Plaintiffs' claims related to the 1998 patent applications are also time-barred because Bilco disclosed the patent applications in writing before the 1999 Agreement was signed and, in any event, the Plaintiffs discussed those applications among themselves before the Agreement.

27

Plaintiffs' statutory fraud claims in Counts One and Two, and Plaintiffs' common law fraud claims in Count Three, also must fail because, as a matter of law and as a matter of fact, Plaintiffs did not justifiably rely upon the Patent Pool valuation.  First, Plaintiffs disclaimed reliance on the Patent Pool valuation both in the Agreement, and in the Bilco Shareholder Consent and Waiver agreements executed prior to the 1999 Agreement.  Second, Plaintiffs knew the Patent Pool valuation did not reflect the risk of product redesign before they signed the June 21, 1999 Agreement.  And, Bilco notified Plaintiffs of the 1998 patent applications prior to execution of the 1999 Agreement and, in any event, the Plaintiffs discussed those applications among themselves before the Agreement.

<u>Counts Four & Five</u>

Plaintiff George Lyons, Jr.'s breach of contract and CUTPA claims must fail because: (i) the plain language of the Patent Pool Agreement entitled Bilco to redesign its products for any reason; (ii) George Lyons, Jr., knowing that Bilco historically redesigned its products, told his son prior to executing the 1999 Agreement that Bilco's ongoing product redesign would reduce his royalties; and (iii) the doctrine of good faith and fair dealing cannot be applied to prevent Bilco from reducing its payments under the Patent Pool Agreement.

**8.    Legal Issues -- Plaintiffs**

This case presents the following legal issues:

a.    Did defendant's alleged withholding and concealment of the

course of conduct it commenced prior to June 21, 1999 constitute securities fraud pursuant to 15 U.S.C. §78j?

  b. Did defendant's alleged withholding and concealment of the course of conduct it commenced prior to June 21, 1999 constitute securities fraud pursuant to Connecticut General Statutes §36b-29(a)(2)?

  c. Did defendant's alleged withholding and concealment of the course of conduct it commenced prior to June 21, 1999 constitute common law fraud?

  d. Did defendant's  alleged implementation of a series of cosmetic, immaterial and unnecessary changes to its products, which served no legitimate commercial purpose, but rather were implemented for the express purpose of depriving George W. Lyons, Jr. of royalties constitute a breach of the terms of the patent pool agreement and/or the duty of good faith and fair dealing implied therein?

  e. Did defendant's alleged implementation of a series of cosmetic, immaterial and unnecessary changes to its products, which served no legitimate commercial purpose, but rather were implemented for the express purpose of depriving George W. Lyons, Jr. of royalties constitute unfair and deceptive trade practices in violation of Connecticut General Statutes §§42-110g?

00961.001/362758.1

Legal Issues -- Defendant

    a.    Whether Plaintiff George Lyons, Jr.'s breach of contract claim, alleging violation of the implied covenant of good faith and fair dealing, is preempted by federal patent law.

    b.    Whether construction of the Patent Pool Agreement and all of its amendments is an issue for the Court.

    c.    Whether construction of all patent claims is an issue for the Court.

    d.    Whether Plaintiffs are entitlement to rescission.

**9.    Voir Dire Questions.**

See Tabs 1a and 1b, attached.

**10.    List of Witnesses.**

Plaintiffs anticipate that they will call some or all of the following witnesses during their case-in-chief:

    a.    Robert Lyons, Jr.
                4 Thistle Rock Drive
                Guilford, CT 06437

Mr. Lyons will testify about the history of The Bilco Company, the involvement of family members with the company, the purpose and history of the patent pool agreement and the amendments thereto, the invention of products by family members, the family disputes leading up to the June 21, 1999 closing, items disclosed and concealed by defendant in connection with the closing and the reliance thereon, the stream of royalties paid to patent pool members over the years, reductions in royalty payments, the notice provided by defendant as to changes being implemented, the nature of the changes to the products, the timing of the changes and the purpose of the changes.

Counsel anticipate that the duration of Mr. Lyons' testimony will be 2-3 hours.

30

b.      Roger Joyce
        52 Pearl Street
        Guilford, CT 06437

Mr. Joyce will testify about the history of The Bilco Company, the involvement of family members with the company, the purpose and history of the patent pool agreement and the amendments thereto, the invention of products by family members, the family disputes leading up to the June 21, 1999 closing, items disclosed and concealed by defendant in connection with the closing and the reliance thereon, the stream of royalties paid to patent pool members over the years, reductions in royalty payments, the notice provided by defendant as to changes being implemented, the nature of the changes to the products, the timing of the changes, the purpose of the changes, and the asserted manufacturing savings resulting from the elimination of Pak-Rope from defendant's roof scuttles.

Counsel anticipate that the duration of Mr. Joyce's testimony will be 2-3 hours.

c.      Robert Lyons, Sr.
        1060 Ridge Road
        Hamden, CT 06517

Mr. Lyons will testify about the history of The Bilco Company, the involvement of family members with the company, the purpose and history of the patent pool agreement and the amendments thereto, the invention of products by family members, the family disputes leading up to the June 21, 1999 closing, items disclosed and concealed by defendant in connection with the closing and the reliance thereon, the stream of royalties paid to patent pool members over the years, reductions in royalty payments, the notice provided by defendant as to changes being implemented, the nature of the changes to the products, the timing of the changes and the purpose of the changes.

Counsel anticipate that the duration of Mr. Lyons' testimony will be 2-3 hours.

d.      George W. Lyons, Jr.
        218 Pine Orchard Road
        Branford, Connecticut  06405

Mr. Lyons will testify about the history of The Bilco Company, the involvement of family members with the company, the purpose and history of the patent pool agreement and the amendments thereto, the invention of products by family members, the family disputes leading up to the June 21, 1999 closing, items disclosed and concealed by defendant in connection with the closing and the reliance thereon, the stream of royalties paid to patent pool members over the years, reductions in royalty payments, the notice provided by defendant as to changes being implemented, and the nature of the changes to the products.

Counsel anticipate that the duration of Mr. Lyons' testimony will be 2-3 hours.

     e.      Mark Lyons
             55 Sheep Pasture Road
             Madison, Connecticut  06443

Mr. Lyons will testify about the history of The Bilco Company, the involvement of family members with the company, the purpose and history of the patent pool agreement and the amendments thereto, the invention of products by family members, the family disputes leading up to the June 21, 1999 closing, items disclosed and concealed by defendant in connection with the closing and the reliance thereon, the stream of royalties paid to patent pool members over the years, reductions in royalty payments, the notice provided by defendant as to changes being implemented, and the nature of the changes to the products.

Counsel anticipate that the duration of Mr. Lyons' testimony will be 4-5 hours.

     f.      Daria Lyons O'Connor
             250 Clark Road
             Brookline, Massachusetts 02445

Ms. O'Connor will testify about the family disputes leading up to the June 21, 1999 closing, items disclosed and concealed by defendant in connection with the closing and the reliance thereon.

Counsel anticipate that the duration of Ms. O'Connor's testimony will be 1-2 hours.

00961.001/362758.1

g.    Alicia L. Sturgess

Ms. Sturgess will testify about the family disputes leading up to the June 21, 1999 closing, items disclosed and concealed by defendant in connection with the closing and the reliance thereon.

Counsel anticipate that the duration of Ms. Sturgess' testimony will be less than one hour.

h.    Chad M. Lyons

Mr. Lyons will testify about the family disputes leading up to the June 21, 1999 closing, items disclosed and concealed by defendant in connection with the closing and the reliance thereon.

Counsel anticipate that the duration of Mr. Lyons' testimony will be less than one hour.

i.    Kent C. Lyons

Mr. Lyons will testify about the family disputes leading up to the June 21, 1999 closing, items disclosed and concealed by defendant in connection with the closing and the reliance thereon.

Counsel anticipate that the duration of Mr. Lyons' testimony will be less than one hour.

j.    M. Natica Lyons
Ms. Lyons will testify about the family disputes leading up to the June 21, 1999 closing, items disclosed and concealed by defendant in connection with the closing and the reliance thereon.

Counsel anticipate that the duration of Ms. Lyons' testimony will be less than one hour.

k.    M. Elizabeth L. Powers

Ms. Powers will testify about the family disputes leading up to the June 21, 1999 closing, items disclosed and concealed by defendant in connection with the closing and the reliance thereon.

Counsel anticipate that the duration of Ms. Powers' testimony will be less than one hour.

l.      William C. Lyons, Jr.
        21 Overlook Farms Road
        Killingworth, Connecticut 06419

Mr. Lyons will testify about the family disputes leading up to the June 21, 1999 closing, items disclosed and concealed by defendant in connection with the closing and the reliance thereon.

Counsel anticipate that the duration of Mr. Lyons' testimony will be 1-2 hours.

m.      Timothy P. Lyons
        13518 Portage Place
        Centerville, Virginia  20120

Mr. Lyons will testify about the family disputes leading up to the June 21, 1999 closing, items disclosed and concealed by defendant in connection with the closing and the reliance thereon.

Counsel anticipate that the duration of Mr. Lyons' testimony will be 1-2 hours.

n.      Mario Zangari
        Siegel O'Connor PC
        171 Orange Street
        New Haven, CT 06504

Mr. Lyons will testify about the family disputes leading up to the June 21, 1999 closing, items disclosed and concealed by defendant in connection with the closing and the reliance thereon.

Counsel anticipate that the duration of Mr. Zangari's testimony will be 1-2 hours.

o.      Joshua Teplitzky
        Teplitzky & Company
        Bradley Road
        Woodbridge, CT 06525

Mr. Teplitzky will testify about the opinions he reached in this matter, as set forth in the written opinion provided to defendant.

Counsel anticipate that the duration of Mr. Teplitzky's testimony will be 2-3 hours

p.      Anthony P. DeLio, Esquire
        DeLio & Peterson LLC
        121 Whitney Avenue,
        New Haven, CT 06510

Mr. DeLio will testify about the ways in which products manufactured by defendant differ from the patented designs.

Counsel anticipate that the duration of Mr. DeLio's testimony will be 1-2 hours

q.      _____

Expert witness to testify about reasonableness of the attorneys' fees claimed by plaintiffs.

Defendant anticipates that it will call some or all of the following witnesses during its case-in-chief:

a.      Paul M. Ruby
        406 Farmington Avenue
        Farmington, CT 06032

Mr. Ruby will testify about:  the contents of his report dated  August 26, 2002.

Counsel estimates that Mr. Ruby's testimony will take 1 1/2 hours.

b.      Michael Cantor, Esquire,
        Cantor Colburn, LLP

35

55 Griffin Road South
Bloomfield, CT 06002

Mr. Cantor will testify about:   the contents of his report dated
August 23, 2002.

Counsel estimates that Mr. Cantor's testimony will take 1 1/2 hours.


c.    J. Allen Kosowsky
      85 Willoughby Road
      Shelton, CT 06484

Mr. Kosowsky will testify about:   his retention as the plaintiffs'
financial advisor, his analysis of the Duff & Phelps report, his
criticisms of the Duff & Phelps report, his knowledge regarding the
risks inherent in the Patent Pool stream of payments, his
knowledge regarding patent obsolescence, his advice to the
plaintiffs and Attorney Zangari, his proposals regarding the Patent
Pool valuation and purchase, plaintiffs' knowledge of the risks
inherent in the Patent Pool stream of payments, his knowledge of
plaintiffs' criticisms of his valuation of the Patent Pool, plaintiffs'
disclosures to him regarding the risks inherent in the Patent Pool
valuation, and plaintiffs' requests that he revalue his original
valuations of the Patent Pool.

Counsel estimates that Mr. Kosowsky's  testimony will take 3 hours.


d.    Mario Zangari, Esquire,
      Siegel O'Connor PC
      171 Orange Street
      New Haven, CT 06504

Mr. Zangari will testify about:   matters not included in his testimony
for the plaintiffs.  Mr. Zangari will testify about: all matters included
in his representation of the plaintiffs from 1997 to 2000, his
retention of J. Allen Kosowsky, his communications with J. Allen
Kosowsky, his knowledge of the risks inherent in the Patent Pool
valuation, his negotiations and drafting in connection with the June
21, 1999 Agreement, his correspondence with other counsel and
parties in connection with the Agreement, his advice to his clients,
his clients' communications to him, his disputes with his clients, and
claims made against him by his clients.

Counsel estimates that Mr. Zangari's testimony will take 6 hours.

     e.     Anthony DeLio, Esquire
              DeLio & Peterson LLC
              121 Whitney Avenue,
              New Haven, CT 06510

Mr. DeLio will testify about:   information he provided to Bilco in 2000 about the removal of the resilient filler material from Bilco products, his understanding of the Bilclip patent and the effect of the removal of the resilient filler material from the Bilco products, and the dates that he provided information to Bilco about the effect of the removal of the resilient filler material.  In addition, Mr. DeLio will testify as to the application for Patent No. 5,960,596, including correspondence with the U. S. Patent Office, and the claims made in that patent and the Bilclip patent.

Counsel estimates that Mr. DeLio's testimony will take 1 1/2 hours.

     f.     Robert Lyons, Jr.
              4 Thistle Rock Drive
              Guilford, CT 06437

Mr. Lyons will testify about:   the family disputes and the negotiations that led to the June 21, 1999 Agreement, the history of Bilco, the history of the Patent Pool and the Amendments to the Patent Pool Agreement, the economic impact of the Patent Pool on Bilco, George Lyons's employment history at Bilco, George Lyons's shareholder history at Bilco, George Lyons's contributions to Bilco and to the Patent Pool, the employment history of the other plaintiffs at Bilco, Bilco's communications to its shareholders and the Shareholder Plaintiffs, and Bilco's implementation of the Fourth Amendment to the Patent Pool Agreement.  Mr. Lyons will also testify as to the Bilco patent applications and product revisions made subsequent to the adoption of the Fourth Amendment to the Patent Pool Agreement.  Mr. Lyons will also testify about the patents in the Patent Pool,

Counsel estimates that Mr. Lyons's testimony will take 2 hours.

     g.     Roger Joyce
              52 Pearl Street

Guilford, CT 06437

Mr. Joyce will testify about:   the family disputes and the negotiations that led to the June 21, 1999 Agreement, the history of Bilco, the history of the Patent Pool and the Amendments to the Patent Pool Agreement, the economic impact of the Patent Pool on Bilco, George Lyons's employment history at Bilco, George Lyons's shareholder history at Bilco, George Lyons's contributions to Bilco and to the Patent Pool, the employment history of the other plaintiffs at Bilco, Bilco's communications to its shareholders and the Shareholder Plaintiffs, and Bilco's implementation of the Fourth Amendment to the Patent Pool Agreement.  Mr. Joyce will also testify about the impact of the Patent Pool Agreement on his family. Mr. Joyce will testify as to the matters in his affidavit and supplemental affidavit filed in connection with Bilco's Motion for Summary Judgment.  Mr. Joyce will also testify as to the Bilco patent applications and product revisions made subsequent to the adoption of the Fourth Amendment to the Patent Pool Agreement. Mr. Joyce will also testify about the patents in the Patent Pool.

Counsel estimates that Mr. Joyce's testimony will take 3 hours.

h.      Shirley S. Ma, Esquire

Ms. Ma will testify as to:   the application for Patent No. 5,960,596, including correspondence with the U. S. Patent Office.  She will testify as to the claims made in the . 5,960,596 Patent and the claims made in the Bilclip patent.

Counsel estimates that Ms. Ma's testimony will take 1 hour.

i.      Robert Lyons, Sr.
        1060 Ridge Road
         Hamden, CT 06517

Mr. Lyons will testify about:   the family disputes and the negotiations that led to the June 21, 1999 Agreement, the history of Bilco, the history of the Patent Pool and the Amendments to the Patent Pool Agreement, the economic impact of the Patent Pool on Bilco, George Lyons's employment history at Bilco, George Lyons's shareholder history at Bilco, George Lyons's contributions to Bilco and to the Patent Pool, the employment history of the other plaintiffs at Bilco, Bilco's communications to its shareholders and

the Shareholder Plaintiffs, and Bilco's implementation of the Fourth Amendment to the Patent Pool Agreement.  Mr. Lyons will also testify as to the Bilco patent applications and product revisions made subsequent to the adoption of the Fourth Amendment to the Patent Pool Agreement.  Mr. Lyons will also testify about the patents in the Patent Pool.

Counsel estimates that Mr. Lyons's testimony will take 2 hours.

      j.      John Lyons
             51 Swarthmore Street
             Hamden, CT 06517

Mr. Lyons will testify about:   the family disputes and the negotiations that led to the June 21, 1999 Agreement, the history of Bilco, the history of the Patent Pool and the Amendments to the Patent Pool Agreement, the economic impact of the Patent Pool on Bilco, George Lyons, Jr.'s employment history at Bilco, George Lyons's shareholder history at Bilco, George Lyons's contributions to Bilco and to the Patent Pool, the employment history of the other plaintiffs at Bilco, Bilco's communications to its shareholders and the Shareholder Plaintiffs, and Bilco's implementation of the Fourth Amendment to the Patent Pool Agreement.  Mr. Lyons will also testify as to the Bilco patent applications and product revisions made subsequent to the adoption of the Fourth Amendment to the Patent Pool Agreement.  Mr. Lyons will also testify about the patents in the Patent Pool.

Counsel estimates that Mr. Lyons's testimony will take 1 hour.

      k.      William Lyons, Sr.
             186 Damascus Road
             Branford, CT 06405

Mr. Lyons will testify about:   the family disputes and the negotiations that led to the June 21, 1999 Agreement, and other family disputes, the history of Bilco, the history of the Patent Pool and the Amendments to the Patent Pool Agreement, the economic impact of the Patent Pool on Bilco, Bilco's communications to its shareholders and the Shareholder Plaintiffs, Bilco's implementation of the Fourth Amendment to the Patent Pool Agreement, and his understanding of the Fourth Amendment to the Patent Pool.  Mr. Lyons will also testify about Plaintiffs' efforts to convince him to file

a claim against Bilco and the reasons for his refusal to do so.  Mr. Lyons will also testify as to the Bilco patent applications and product revisions made subsequent to the adoption of the Fourth Amendment to the Patent Pool Agreement.  Mr. Lyons will also testify about the patents in the Patent Pool, George Lyons's employment history at Bilco, George Lyons's shareholder history at Bilco, and George Lyons's contributions to Bilco and to the Patent Pool.

Counsel estimates that Mr. Lyon's testimony will take 3 hours.

**11.    Exhibits**

Plaintiffs anticipate they will seek to introduce some or all of the following exhibits during their case-in-chief:

See Tab 2.

Defendant anticipates it will seek to introduce some or all of the following exhibits during its case-in-chief:

See Tab 3.

**12.    Deposition Testimony.**

A.    Plaintiffs may seek to introduce testimony from the designated pages of the depositions of the following, as well as introduction of the exhibits referenced therein:

The Bilco Company, by its designee Roger F. Joyce, November 28, 2001; pp. 4 (lines 22-25); 5 (line 25) – 6 (line 15); 9 (line 11) – 10 (line 17), 12 (lines 11 - 19); 13 (lines 6-23); 15 (line 19) – 16 (line 8); 19 (lines 1-19); 20 (line 20) – 21 (line 13); 31 (line 12) – 32 (line 15); 33 (lines 2-25); 47 (line 16) – 48 (line 8); 107 (line 18) – 108 (line 14); 110 (line 1) – 111 (line 14); 128 (line 6) – 129 (line 2); 140 (line 14) – 141 (line 19).

40

Robert Lyons, Sr., December 5, 2001, pp. 3 (line 22) – 4 (line 14); 6 (lines 8 – 16, 22-25); 8 (lines 8 – 13); 10 (lines 9 – 21); 11 (line 19) – 13 (line 11); 16 (line 15) – 17 (line 8); 21 (line 18) – 22 (line 12); 24 (line 8) – 26 (line 1); 26 (line 20) – 27 (line 2); 27 (line 25) – 30 (line 8); 30 (line 14) – 32 (line 6); 32 (lines 12-18); 36 (line 19) – 38 (line 2); 46 (line 17) – 49 (line 7); 63 (line 5) – 65 (line 13).

Defendant objects to the introduction of this deposition testimony, absent plaintiff's agreement to permit introduction of the entire transcripts.

B.    Defendant may seek to introduce testimony from the designated pages of the depositions of the following, as well as introduction of the exhibits referenced therein:

Mark Lyons, May 29,2002: pp. 12-14,16,18-21, 25-26, 32-35, 45, 48, 51, 54, 56-57, 64-65, 80-81, 88-89, 95-96,111-124, 127-128, 131, 155-56

George W.Lyons, Jr., May 3,2002 pp. 19-20, 24-25, 32, 33, 35, 42-46, 50, 90, 100-102

William C. Lyons, May 30, 2002 pp. 17, 18-20, 22-23, 35, 40, 41-42, 45-47, 58-61, 79-80, 84-85, 85-87, 86-95

Plaintiffs object to the introduction of this deposition testimony, absent plaintiff's agreement to permit introduction of the entire transcripts.

**13.    Requests for Jury Instructions.**

See Tabs 4 and 5, attached.

**14.    Anticipated Evidentiary Problems.**

41

See accompanying Motions in Limine and Supporting Memoranda of Law. Tab 6 is Plaintiffs' Motion in Limine; Defendant's have today filed three Motions in Limine by manual filing that will be supplemented with an electronic filing.

**15.     Verdict Forms.**

See Tabs 7 and 8.

**16.     Trial Time.**

Counsel anticipate that eight trial days will be required.

00961.001/362758.1

/s/ Robert A. Harris _____          /s/ Maurice T. FitzMaurice

Robert A. Harris (ct#06759)            Maurice T. FitzMaurice, Esq.
Fed. Bar. No. ct06759                  Fed. Bar. No. ct23071


Zeldes, Needle & Cooper                Reid And Riege, P.C
A Professional Corporation             One Financial Plaza
1000 Lafayette Boulevard               Hartford, CT 06103-3185
Bridgeport, CT 06604                   Tel: (860) 278-1150
Tel: (203) 333-9441                    E-mail: fitz@reidandriege.com
E-Mail: rharris@znclaw.com

Attorneys for Plaintiffs               Attorneys for Defendant


.

43