UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| George W. Lyons, Jr., Alicia L. Sturgess, : | |
| Mark C. Lyons, Chad M. Lyons, : | Civil Action No: |
| Daria L. O'Connor, Kent C. Lyons, : | 3:01 CV1106 (RNC) |
| M. Natica Lyons, M. Elizabeth L. Powers, : | |
| William C. Lyons, Jr., Timothy P. Lyons, : | |
| Mark C. Lyons, Trustee of the : | |
| George W. Lyons, Jr. Family Trust : | |
| : | |
| v. : | |
| : | |
| The Bilco Company : | JUNE 21, 2004 |

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERT WITNESS JOSHUA TEPLITZKY, JD, CPA**

Pursuant to Federal Rules of Evidence 104 and 702, Federal Rules of Civil Procedure 16(c)(4) and 26(a), and this Court's Pretrial Order, Defendant The Bilco Company ("Bilco") hereby moves to exclude all testimony at the trial of this case by Plaintiffs' expert witness, Joshua Teplitzky, JD, CPA, as to:

(A) Plaintiffs' alleged fraud damages; and

(B) Plaintiff, George Lyons', Jr.'s alleged contract and CUTPA damages.

As discussed herein, all testimony related to Plaintiffs' alleged fraud damages should be excluded because such testimony is beyond the scope of Mr. Teplitzky's Rule 26

Expert Report. All testimony related to Plaintiff George Lyons, Jr.'s contract and CUTPA damages should be excluded because Mr. Teplitzky's Expert Report is unreliable.

### A. Mr. Teplitzky Cannot Testify as to Plaintiffs' Fraud Damages Because Such Testimony is Beyond the Scope of His Expert Report

Plaintiffs may seek to offer the testimony of their expert witness, Joshua Teplitzky, JD, CPA, as to Plaintiffs' claimed fraud damages. Mr. Teplitzky's Rule 26 Expert Report, dated July 10, 2002, is attached as Exhibit A. As is shown below, any testimony from Mr. Teplitzky about Plaintiffs' claimed fraud damages should be excluded because that testimony is beyond the scope of his Expert Report.

In his Expert Report, Mr. Teplitzky values the Patent Pool at $7,141,000 and Plaintiff George Lyons, Jr.'s lost royalty payments at $1,385,000. Ex. A. He provides no valuation of Bilco, no valuation of the Bilco stock, no valuation of Fairfax Properties, Inc., no valuation of the Fairfax stock, and no opinion as to any other element of Plaintiff's case. Because Mr. Teplitzky provides no valuation of Bilco or Fairfax, or the Plaintiffs' stock in Bilco or Fairfax, Mr. Teplitzky cannot testify as to fraud damages allegedly suffered by the Plaintiffs.

Under the mandatory discovery rule of Federal Rule of Civil Procedure ("FRCP") 26(a)(2)(B), each party who seeks to offer expert testimony at trial must provide its opponent with a written report that

> ***shall contain*** *a complete statement of **all** opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; . . . .*

(emphasis added). Subdivision (C) provides that the disclosure must be made "at least 90 days before the trial date or the date the case is to be ready for trial."

Under FRCP 37(c)(1), "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any witness or information not so disclosed." "This result is 'self executing' and is an 'automatic sanction' that is designed to provide a strong inducement for disclosure of relevant material that the disclosing party expects to use as evidence." *Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998); *Fund Comm'n Serv., II, Inc. v. Westpac Banking Co.*, 1996 WL 469660, *3 (S.D.N.Y. Aug. 16, 1996).

In *Means v. Letcher*, 51 Fed. Appx. 281 (10th Cir. 2002), the Tenth Circuit affirmed the district court's order granting the defendant's motion for a new trial based on the improper elicitation of testimony from plaintiff's expert during trial. *Means*, *supra*, 151 Fed. Appx. at 281-83. The district court initially had granted a pretrial motion in limine to exclude testimony by the plaintiff's expert physician related to the appropriate standard of care because the expert had not opined on this issue in his expert report. *Id.* at 281-83. Over trial objections, however, the expert suggested that the defendant's treatment was inappropriate.

3

00961.000/362694.1

*Id.* at 283-84.  The Tenth Circuit held that such testimony went "well beyond the opinions expressed in [the expert's] written report and that there was an obvious violation of Rule 26."  *Id.* at 283.

In *Lamarca v. United States*, 31 F. Supp.2d 110 (S.D.N.Y. 1999), the court granted the plaintiff's motion under Rule 37(c)(1) to strike the testimony of the defendant's expert witness as to the cause of the plaintiff's hip fracture.  *Id.* at 122.  The expert's report was "devoid of an opinion as to the cause" of the plaintiff's injury and, therefore, failed to put the plaintiff on notice that the defendant's expert would testify about causation.  *Id.*

In *Mead Johnson & Co. v. Barr Laboratories, Inc.*, 38 F. Supp.2d 289, 297 (S.D.N.Y. 1999), the court held that the defendant had not demonstrated substantial justification for the failure to exclude from the expert's report a discussion of a particular patent.  *Id.* at 297.  The court struck that portion of the expert's testimony that discussed the patent as beyond the scope of the expert's report.  *Id.*

In each of the foregoing cases, there was a complete lack of disclosure regarding the testimony at issue.  Similarly, Mr. Teplitzky's Expert Report here is completely devoid of any opinion as to Plaintiffs' fraud damages.  Permitting Mr. Teplitzky to testify as to the amount of Plaintiffs' fraud damages would effectively permit Plaintiffs to offer surprise evidence at trial, thereby thwarting the unequivocal language of FRCP 29(a)(2)(B).

4

Accordingly, the Court should preclude Mr. Teplitzky from testifying as to Plaintiffs' fraud damages.

B.  **Mr. Teplitzky's Opinion Regarding the Value of the Patent Pool and the Amount of George Lyons, Jr.'s Damages Should Be Excluded Under FRE 702 Because It Is Not Reliable**

Plaintiffs have disclosed that Mr. Teplitzky will testify at trial as to Plaintiff George Lyons, Jr.'s damages allegedly sustained as a result of Bilco's reduction in payments to the Patent Pool. Ex. B. As discussed below, Mr. Teplitzky's expert opinion of the value of the Patent Pool and of George Lyons, Jr.'s damages is unreliable under Federal Rule of Evidence ("FRE") 702 because:

> (1) it is based upon an unreliable foundation, specifically unsupportable discount and capitalization rates; and
>
> (2) it ignores two significant risks to the value of the Patent Pool:
>
>> (a) the risk of historical obsolescence of patents in the Patent Pool; and
>>
>> (b) the risk that product redesign or new patents would reduce royalty payments.

Prior to the June 21, 1999 Settlement and Reorganization Agreement (the "1999 Agreement"), the parties recognized that there were two significant risks to the Patent Pool that may affect the value of the Patent Pool and royalty payments: (i) the historical

5

obsolescence of patents; and (ii) the risk that Bilco would redesign products embodying Patent Pool patents to avoid royalty payments. As shown below, Mr. Teplitzky ignored these risks in performing his valuation.

The documentary and testimonial evidence supporting the parties' knowledge of these risks prior to the 1999 Agreement has been discussed at length, both in the parties' summary judgment motions and in oral argument thereon. In order to reduce the text of this Motion, a factual summary of that evidence has been omitted from the body of this Memorandum. A summary of the factual background of this Motion, however, with supporting references, is in Appendix A.

> 1. **The Expert Report is Unreliable Because It Is Based Upon an Unreliable Foundation, Specifically Unsupportable Discount and Capitalization Rates**

Mr. Teplitzky's valuations of the Patent Pool and George Lyons, Jr.'s lost royalties are a blended average of two calculations employing two different valuation methodologies: the discounted cash flow analysis and the capitalized cash flow analysis. Ex. A. Application of those two methods yielded a "discount rate" and a "capitalization rate", respectively. Mr. Teplitzky's analysis in this case resulted in a discount rate of 10% and a capitalization rate of 7.5%. Ex. A, at 5. As shown below, Mr. Teplitzky's use of these rates demonstrates beyond any question that his valuation is unreliable.

A discount rate is developed to reflect the risk inherent in an investment. The lower the discount rate, the lower the investment risk, and vice versa. *See* Depos. Joshua Teplitzky, 9/17/02, at 47-48. Business appraisers use a source known as *Stocks, Bond, Bills, and Inflation*, produced by Ibbotson Associates (hereinafter "Ibbotson"), to develop this rate. Mr. Teplitzky admitted at his deposition that Ibbotson was authoritative in this area, but also admitted that he did not consult Ibbotson in this case. Depos. Joshua Teplitzky, 9/17/02, at 41-42 (Ex C). Instead, he claimed to have arrived at his 10% discount rate based on his experience, Depos. Joshua Teplitzky, 9/17/02, at 39-40, although he admitted that he had never before valued a manufacturing business. Depos. Joshua Teplitzky, 9/17/02, at 11.

For 1999, Ibbotson reported the following. The discount rate for U.S Treasury insured bonds, the least riskiest investment vehicle, was 5.4%. Ex. D. The equity risk premium for Blue Chip companies (companies whose value in 1999 was between $918 million and $4.2 billion) whose stock is publicly traded, such as IBM or General Motors, was an additional 8%. Ex. D. Accordingly, the discount rate in 1999 for a Blue Chip company was 13.4%, more than one-third higher than the rate Mr. Teplitzky assigned to the Bilco Patent Pool. Bilco, of course, was not General Motors. According to Ibbotsen, an additional risk premium of 2.6% to reflect Bilco's micro-capitalization (companies whose value in 1999

was less than $252 million) was required, bringing the Bilco discount rate to 16% before Patent Pool specific risks are even considered.

Mr. Teplitzky's use of a 10% discount rate demonstrates that his valuation of the Patent Pool is unsupportable, unreliable, and inadmissible as competent evidence. By using a 10% discount rate, Mr. Teplitzky concluded that an investment in the Bilco Patent Pool was substantially less risky than an investment in a Blue Chip company such as IBM or General Motors. Put another way, Mr. Teplitzky's approach would permit testimony that the discount rate for a group of companies capitalized at approximately one-tenth of the capitalization of a group of Blue Chip companies should be set lower than the rate for the Blue Chip companies. This is indeed a novel approach, which might surprise more than a few business valuation experts who have always assumed that the opposite was true.

This conclusion lacks any rational foundation, and should be recognized as irrational by the Court. According to the Expert Report, the discount rate "should reflect the degree of perceived risk associated with achieving the projected results." Ex. A, at 4. At his deposition, Mr. Teplitzky testified his discount rate accounts for all potential future events and factors that would affect the value of the Patent Pool. He stated that his discount rate "take[s] all the potential future events into account and it would be inherited." Depos. Joshua Teplitzky, 9/17/02, at 35, 45. Since Bilco was liable for the Patent Pool payments, the

8

discount rate for the Patent Pool could not be lower than the appropriate discount rate for Bilco. By assigning a discount rate of 10% to the Patent Pool valuation, Mr. Teplitzky not only contradicted his own statement that the discount rate should reflect the perceived risk associated with the investment but also directly contradicted the rudimentary business valuation principle that size matters where capitalization is a factor.

Mr. Teplitzky's capitalization rate suffers from the same infirmity as his discount rate. Mr. Teplitzky assigned a capitalization rate of 7.5%, Ex. A, at 5, producing a rate of return of 13.33%, Depos. Joshua Teplitzky, 9/17/02, at 45-46, still lower than the 1999 Blue Chip rate. By blending this 13.3% rate with the 10% discount rate, Mr. Teplitzky used an average rate of approximately 11.65%, significantly below the Blue Chip rate.

### 2. The Expert Report is Unreliable Because the Discount Rate Failed to Account for Known Risks to the Royalty Stream

At his deposition, Mr. Teplitzky admitted that if the discount rate he employed did not reflect accurately the degree of perceived risk associated with projected Patent Pool income, "*it would change the valuation*" and increase the discount rate. Depos. Joshua Teplitzky, 9/17/02, at 32 (emphasis added); *Id*. at 63.

Mr. Teplitzky testified, however, that his 10% discount rate did not reflect any of the following risks:

00961.000/362694.1

  (i)  historical patent obsolescence;

  (ii)  the risk that Bilco would redesign Patent Pool patents; or

  (iii)  product enhancements.

Depos. Joshua Teplitzky, 9/17/02 at 34-39, 45, 59-71. During his deposition, the following colloquy occurred:

  Q:  [Mr. FitzMaurice] Did you continuously reflect the risk of design around?

  A:  No.

  Q:  Did you continuously reflect the risk of discontinuance of patents?

  A:  No.

  Q:  Did you continuously reflect the risk that Bilco would eliminate products covered by patents in the pool?

  A:  Not specifically, no.

  Q:  In connection with your evaluation in this case, were you ever told that the Plaintiff's [sic] had raised a concern about Bilco redesigning around the patents prior to June 21, 1999?

  A:  No.

* * *

> Q: In connection with the valuation in this case, did you make any effort to determine what knowledge, if any, the Plaintiff's [sic] had about the risk of redesign of patents in this case?
>
> * * *
>
> A: I did not.

Depos. Joshua Teplitzky, 9/17/02 at 69-71.

According to his Expert Report, Mr. Teplitzky reviewed and relied on the 1997 Duff & Phelps Report, a 1998 Duff & Phelps report, and a 1999 valuation prepared by Management Planning, Inc. Ex. A, at 1. The Expert Report stated, however, that Mr. Teplitzky "calculated the value of the royalty stream *using the approach* taken by Duff & Phelps in their July 1997 report." Ex. A, at 4 (emphasis added). The Expert Report stated further that, although Mr. Teplitzky relied on the July 1997 Duff & Phelps Report, he "did not independently verify the accuracy or completeness of assumptions" used by that report in reaching his conclusions. Ex. A, at 1.

Mr. Teplitzky acknowledged at his deposition that the Duff & Phelps Report upon which he modeled his valuation of the Patent Pool did not account for the risk of redesign or of patent obsolescence:

> Q: [Mr. FitzMaurice] What information did you have available to you that showed the company's historical experience with product enhancement?

11

> A: Again, same information that would have been included in the records that I reviewed to the extent they spoke about enhancements, that's where I would have received it. (Depos. Joshua Teplitzky, 9/17/02, p. 36, ll. 23-25; p. 37, ll. 1-6).
>
> * * *
>
> Q: And in skimming through [the 1997 Duff & Phelps Report], did you see any reference to the risk of product enhancement?
>
> A: I did not. (Depos. Joshua Teplitzky, 9/17/02, p. 38, ll. 15-19).
>
> * * *
>
> Q: You reviewed and you haven't found any reference to - -
>
> A: Skimming it now, yes. No, no specific reference to that. (Depos. Joshua Teplitzky, 9/17/02, p. 39, ll. 6-9).

When asked how his Patent Pool valuation would be impacted by knowledge of the risk of redesign or patent obsolescence, Mr. Teplitzky stated:

> A: It would reduce, again, presumably it would reduce the value of the or it would reduce the liability or the potential liability on the patent pool that was going to be paid out in the future to individuals as well as how it might effect [sic] the valuation of the company.

Depos. Joshua Teplitzky, 9/17/02 at 61-62. He continued:

> Q: [Mr. FitzMaurice] Now, let's assume that you didn't know what your reduced payments would be only that there was a risk that they would be reduced, then what would you do?

12

\* \* \*

A: . . . you might increase your discount rate. (Depos. Joshua Teplitzky, 9/17/02, p. 63, ll. 2-5, 21-22).

\* \* \*

Q: [Mr. FitzMaurice] [If] [y]ou knew that was a risk, that the patent pool stream would be less than what was projected in your report . . . what valuation advice would you have given to your clients?

\* \* \*

A: The value would be if you knew there was a risk, you would presumably use a higher discount rate and you potentially would reduce, you could potentially reduce the valuation of the patent pool going forward. (Depos. Joshua Teplitzky, 9/17/02, p. 65 ll. 23-25, p. 66 ll. 19-24).

### 3. Mr. Teplitzky's Expert Report Fails the Reliability Requirement of FRE 702

Under Federal Rule of Evidence ("FRE") 702, the proponent of expert testimony has the burden to show by a preponderance of the evidence that the proffered expert testimony is competent, relevant, and reliable. *Perkins v. Origin Medsystems, Inc.*, 299 F. Supp.2d 45, 52 (D. Conn. 2004). "[T]he fact that [the witness] is a certified public accountant—and thus generally possesses the 'specialized knowledge' to qualify . . .—does not automatically render

his opinions in this case *reliable*." *Securities & Exchange Comm'n v. Lipson*, 46 F. Supp.2d 758, 762 (N.D. Ill. 1999).

In determining whether the expert's opinion is reliable, the Court must exercise its "gatekeeping" authority and conduct "a rigorous examination of the data on which the expert relies, the method by which he draws his opinions from . . . studies and data, and the application of the data and methods to the case at hand." *Pugliano v. United States*, 2004 WL 213028, *1 (D. Conn., Jan. 30, 2004); *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). When conducting this review, the Court's attention is properly focused on whether the expert's "conclusions are based on a *reliable foundation*" of methodology and analysis. *Pugliano*, *supra*, at *1.

The Supreme Court in *Daubert* articulated several factors for evaluating the reliability of an expert's opinion. *Daubert*, *supra*, at 593-595. These factors, however, are not exclusive. *Id*. at 593. The Court, therefore, may consider other factors in determining whether the proffered testimony is reliable under FRE 702. *See Kumho*, *supra*, at 152; *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000) (reliability determination and factors considered are vested in court's gatekeeping function). Such factors include whether the expert's methodology and analysis adequately accounted for variables that may impact his

14

opinion, and whether the expert verified the accuracy of the information supplied to him in formulating his opinions.

In *In re Executive Telecard Ltd. Securities Litigation*, 979 F. Supp. 1021 (S.D.N.Y. 1997), the district court excluded the testimony of the plaintiffs' damages expert who was asked to opine as to the true value of the plaintiffs' stock absent the alleged fraud. *Id.* at 1024. The Court excluded the testimony because the expert failed to conduct an "'event study' to determine whether [the company's] stock price was affected by company specific factors exclusive of the challenged fraud." *Id.* The expert failed to consider, *inter alia*, that the stock value may have been affected by a proposed spin-off of certain company assets, though the plaintiffs knew that shareholders had been concerned about the wisdom of a spin-off. *Id.* at 1025-26, & n.1 (noting the expert addressed these issues in a "cursory fashion"). The court held that the expert's analysis was unreliable under FRE 702 because it failed to consider other material factors that might affect the stock's true value. *Id.* at 1026.

In *Munoz v. Orr*, *supra*, in striking similarity to this case, the plaintiffs' expert admitted at his deposition that he had failed "to consider other variables" that may have affected promotion rates at the military base where the plaintiffs were employed. *Munoz*, *supra*, at 301-03. The expert also failed to "seek to verify the information presented to him" in connection with his analysis. *Id.* at 302. Based on these fundamental flaws, the Court of

15

Appeals held that the district court properly excluded the expert's opinion. *Id.*; *See also Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1045 (7th Cir. 1998) (holding that the failure to account for certain variables rendered the expert's table "essentially worthless").

To arrive at his opinion as to the amount of George Lyons, Jr.'s damages attributable to a reduction in royalty payments, Mr. Teplitzky performed an analysis that placed a value on the expected future revenue stream of the Patent Pool. His methodology purportedly accounted for every foreseeable risk that could affect the amount of revenue from the Patent Pool. Depos. Joshua Teplitzky, 9/17/02 at 31-32. Those risks were reflected in his 10% discount rate and his 7.5% capitalization rate. Depos. Joshua Teplitzky, 9/17/02 at 31-32. As Mr. Teplitzky admitted at his deposition, if the discount rate did not accurately account for every perceived risk associated with Patent Pool revenue, the valuation of the royalty stream—and Lyons' lost revenue—would change. Depos. Joshua Teplitzky, 9/17/02 at 32.

Mr. Teplitzky, however, assigned his discount and capitalization rates by ignoring Ibbotsen and basic principles of valuation. He offered no support for his novel approach. His fall-back position is that he is relied on his experience, even though he had no experience in valuing a manufacturing company of any size until this case. Depos. Joshua Teplitzky, 9/17/02, at 11. That lack of experience hardly supports the admission of his valuation. For

these reasons alone should Mr. Teplitzky's Expert Report and testimony be excluded on reliability grounds.  *See* FRE 702.

Moreover,, Mr. Teplitzky admitted at his deposition that his discount rate did not account for the risk of redesign, patent obsolescence, or product enhancement and that if it did, his valuation would change.  Depos. Joshua Teplitzky, 9/17/02 at 60-69, 70-71.  Mr. Teplitzky also admitted that he was never told that Plaintiffs had raised a concern about Bilco redesigning around patents prior to the Settlement Agreement; Depos. Joshua Teplitzky, 9/17/02 at 69-70; and that he made no effort prior to performing his valuation to determine whether there was any risk that Bilco would discontinue or redesign Patent Pool patents.  Depos. Joshua Teplitzky, 9/17/02 at 70-71.

Mr. Teplitzky's methodology in arriving at a value of the Patent Pool royalty stream was flawed because it failed to consider material factors that would reduce its value.  Since his opinion of George Lyons, Jr.'s damages is based on the Patent Pool royalty stream, it too is flawed.  Because of these flaws, Mr. Teplitzky's proffered testimony as to the value of the royalty stream and George Lyons, Jr.'s damages is patently unreliable under FRE 702.  Accordingly, Mr. Teplitzky's testimony should be excluded in its entirety.

                                        **DEFENDANT**
                                        **THE BILCO COMPANY**

By   /s/ Peter K. Rydel
       Peter K. Rydel
       Fed. I.D. # ct24793
       Reid and Riege, P.C.
       One Financial Plaza
       Hartford, CT 06103
       Tel: (860) 278-1150
       Fax: (860) 240-1002
       Its Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of June 2004, a copy of the foregoing was sent by electronic mail and by first class mail, postage prepaid, to the following:

*Attorney for Plaintiffs*
Robert A. Harris, Esquire
Zeldes, Needle & Cooper
1000 Lafayette Boulevard
Bridgeport CT 06604

                        /s/ Peter K. Rydel
                          Peter K. Rydel