UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| George W. Lyons, Jr., Alicia L. Sturgess, : | |
| Mark C. Lyons, Chad M. Lyons,           : | Civil Action No: |
| Daria L. O'Connor, Kent C. Lyons,       : | 3:01 CV1106 (RNC) |
| M. Natica Lyons, M. Elizabeth L. Powers, : | |
| William C. Lyons, Jr., Timothy P. Lyons, : | |
| Mark C. Lyons, Trustee of the           : | |
| George W. Lyons, Jr. Family Trust       : | |
|                                          : | |
| v.                                       : | |
|                                          : | |
| The Bilco Company                       : | JUNE 21, 2004 |

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE
CERTAIN TESTIMONY RELATED TO PLAINTIFF'S
BREACH OF CONTRACT AND CUTPA CLAIMS**

Pursuant to Federal Rules of Evidence 104, 701, and 702, Federal Rule of Civil Procedure 16(c)(4), and this Court's Pretrial Order, Defendant The Bilco Company ("Bilco") hereby moves in limine to exclude all testimony by any witness at the trial of this case as to the following issues:

(i)  whether the Patent Pool Agreement requires royalty payments for sales of products embodying allegedly trivial or meaningless changes from Patent Pool patents;

(ii) whether the implied covenant of good faith and fair dealing, a rule of contract construction, requires Bilco to pay royalties for products embodying allegedly insubstantial changes from patented products; and

00961.000/362180.1

    (iii)    whether any Bilco products infringe Patent Pool patents under the patent law doctrine of equivalents.

As discussed below, all evidence regarding these issues should be excluded because:

    (i)    the Patent Pool Agreement is clear and unambiguous; it does not require royalty payments unless the technology of a patent is embodied in a Bilco patent;

    (ii)    the implied covenant of good faith and fair dealing does not apply to this case because:

        (a)    the covenant cannot be used to trump clear contractual language; and

        (b)    it is preempted by the patent law which strictly limits the scope of patents;

    (iii)    Plaintiff has failed to disclose an expert to offer an opinion under the doctrine of equivalents.

## I.    Summary of Argument and Background Facts

In his Complaint, Plaintiff George W. Lyons, Jr. ("Plaintiff") alleges that Bilco breached the Patent Pool Agreement ("PPA") by designing, patenting, and selling roof scuttles that embody technology that resembles technology embodied in the Bilclip patent, U.S. Patent # 4,941,300. Complaint, Fourth Count. Plaintiff also asserts a derivative CUTPA claim based on the same contentions. Complaint, Fifth Count.

The Bilclip Patent, issued to George Lyons, Jr. and assigned to Bilco, describes a device in which a resilient filler material, called "Pak-Rope," is employed to lace pressure on a rolled piece of roofing to keep that roofing in place within a channel.

In 2000, Bilco discovered that the Pak-Rope was not required to keep the roofing in place within the channel. Ex. 1, Depos. Roger Joyce, 11/28/01, at 12.[1] When the roofing material was rolled-up, the material exerted pressure against the channel sides and stayed within the channel. Since the Pak-Rope was unnecessary, Bilco stopped using it, thereby saving the cost of the Pak-Rope, the labor cost to insert it, and a 5% royalty expense for using the Bilclip Patent. Ex. 1, Depos. Roger Joyce, 11/28/01, at 12.

Plaintiff George Lyons, Jr. asserts that, under the implied covenant of good faith and fair dealing, Bilco must continue to make royalty payments under the Patent Pool Agreement ("PPA") because the Bilco products that do not presently include the Pak-Rope show only "insubstantial," "trivial," or "cosmetic" changes to the technology shown in the Bilclip Patent.

There are three ways in which Plaintiff may seek to prove his allegations. First, Plaintiff may seek to offer testimony that the language of the PPA and its amendments,

---

[1] Numerical exhibit citations are to exhibits accompanying this Memorandum. Alphabetical exhibit citations are to Bilco's exhibits submitted in connection with its summary judgment papers. Those exhibits have not been

which require Bilco to pay royalties on sales of products embodying Patent Pool patents, also requires royalties to be paid on sales of products that are "so similar" to those in the Patent Pool to be virtually equivalent.

Whether the language of the PPA requires royalty payments for such products, however, is a question of contract construction for the Court to determine as a matter of law because: (i) the language of the PPA is clear and unambiguous; and (ii) Plaintiff has never alleged that the PPA is not clear and unambiguous. Thus, any testimony offered by Plaintiff as to Bilco's obligation to pay royalties for allegedly trivial or minor changes to Patent Pool products is irrelevant and should be excluded.

Second, Plaintiff may claim, as he has, that the state law implied covenant of good faith and fair dealing—a rule of contract construction—requires Bilco to pay royalties on products that embody technology that is "so close" to Patent Pool technology as virtually to infringe upon it. Complaint, Fourth Count. All testimony related to this claim, however, should be precluded because: (i) the implied covenant of good faith and fair dealing does not trump clear contractual language; and (ii) the covenant is preempted by the patent law which

---

reproduced with this Motion in order to reduce the volume of the parties' Joint Trial Memorandum submission. Bilco will reproduce any exhibits upon the Court's request.

00961.000/362180.1

strictly limits the scope of patents. Thus, all testimony related to the implied covenant of good faith and fair dealing should be excluded.

Finally, Plaintiff may seek to prove his claims by demonstrating under the patent law doctrine of equivalents that Bilco's revised product is substantially the same as the product described in the Bilclip product. An equivalency analysis, however, requires a scientific and technical comparison of the new product with the prior art for which expert testimony is required under Federal Rule of Evidence 702. Since Plaintiff has not disclosed an expert witness to testify as to an equivalency theory of infringement, all testimony on this issue should be excluded.

## II.　Law and Argument

### A.　The Patent Pool Agreement Is Clear And Does Not Require Royalty Payments If Patent Pool Patents Are Not Used

The fundamental premise of Plaintiff's breach of contract and CUTPA claims is that the PPA, along with its amendments, requires Bilco to make royalty payments to the Patent Pool even if a product does not literally embody a Patent Pool patent. According to Plaintiff's construction of the PPA, if a product makes only trivial or functionally meaningless revisions to a Patent Pool patent, then Bilco owes a royalty on that product even though Bilco does not literally use the patent.

5

00961.000/362180.1

As written, and as amended by the 1994 Fourth Supplemental Agreement to Agreement of Sale of Certain Inventions (the "Fourth Amendment"), the PPA requires Bilco to make royalty payments to the Patent Pool *only* if a product uses a Patent Pool patent. The Fourth Amendment provided that Bilco

> may proceed to implement research and product development capabilities independent of those previously provided by [Pool owners]. *In the event that future inventions or product improvements result in products being manufactured by [Bilco] which no longer embody inventions described in Paragraph 1,* [Bilco] shall have no obligation to make any payments to [Pool owners] with respect to such products. In the event that future inventions result in products being manufactured by [Bilco] which embody both such future inventions and inventions described in Paragraph 1, no reduction shall be made in the payments due to [Pool owners] as the result of the addition of such future inventions.

Ex. FFF (emphasis added). Thus, if a product uses a Patent Pool patent, a royalty is owed. If a product does not use a Patent Pool patent, no royalty is owed.

Plaintiff has never alleged that the PPA in this regard is ambiguous. In fact, as Plaintiff's counsel explained to him prior to execution of the 1999 Settlement and Reorganization Agreement:

> The current agreement and amendments allow Bilco to sell any products in wishes. If a product happens to contain one or more of the patentable items, then a royalty is due. *As currently written, there is no way for the patent pool to force Bilco to continue to include certain*

6

> *patent features in a product or to prevent Bilco from eliminating a product line*.

Ex. Z (emphasis added).

It is well settled Connecticut law that, where contract language is clear and unambiguous, the meaning and construction of the contract is a matter of law for the Court to determine, rather than a question of fact for the jury to determine after evaluating testimony and other evidence. *See Sartor v. Town of Manchester*, 312 F. Supp.2d 238, 242-43 (D. Conn. 2004) (construing Connecticut law). Accordingly, any testimony proffered by Plaintiff as to the meaning and construction of Bilco's obligations under the PPA is irrelevant and should be excluded.[2]

### B. The Covenant of Good Faith and Fair Dealing Does Not Apply to Restrict Bilco's Rights Under the Patent Pool

#### 1. The Implied Covenant of Good Faith and Fair Dealing Cannot Be Used to Trump Clear Contractual Language

Knowing the language of the PPA is clear and unambiguous, Plaintiff resorts to the implied covenant of good faith and fair dealing to require Bilco to use Patent Pool technology where the language of the PPA does not require Bilco to do so. Plaintiff asserts

---

[2] Even if the language of the PPA could be susceptible to different meanings, Plaintiff has never alleged in the course of this action that the terms of the PPA require royalty payments where no Patent Pool patent is used. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (applying rule of judicial estoppel to preclude State of New Hampshire from asserting position inconsistent with that taken in earlier litigation).

00961.000/362180.1

that a rule of contract construction, *see Magnon v. Anaconda Indus., Inc.*, 193 Conn. 558, 566-67 (1984), should be employed to eradicate the clear language of the PPA.

Both the Second Circuit and the Connecticut Supreme Court have made clear that the doctrine of good faith and fair dealing will not trump clear contractual language. In *Grand Light & Supply Co., Inc. v. Honeywell, Inc.*, 771 F.2d 672 (2d Cir. 1985), the Court held that the statutory good faith requirement found in Conn. Gen. Stat. Section 42a-1-203 did not override a contractual provision allowing termination on thirty days' notice. And in *Retrofit Partners I v. Lucas Industries*, 201 F.3d 155 (2d Cir. 2000), the Court specifically refused to apply the doctrine of good faith and fair dealing to an agreement that did not "compel" a decision by an investor who retained the discretion to invest or not invest in a project. The Court held that the "1992 Agreement did not *compel* Lucas to make any choice at all about investing in Retrofit or the Vantage 305 project; since no choice was *compelled*, there was no further requirement that it be made in good faith." *Id*. at 162 (emphasis added).

The clear language of the PPA does not compel Bilco to continue using Patent Pool patents merely to continue royalty payments or to pay royalties if its products do not use the patents. Accordingly, the covenant of good faith and fair dealing does not apply to this case. Any testimony related to the doctrine of good faith and fair dealing, therefore, should be excluded.

### 2. The Objective Patent Doctrine of Equivalents Preempts the Subjective Good Faith Standard When Construing the Scope of a Patent

Even if the state law implied covenant of good faith and fair dealing may be applied to the PPA, it is preempted by the patent law doctrine of equivalents. Plaintiff alleges that the contract doctrine of good faith and fair dealing protects him against allegedly meaningless or insubstantial revisions to Patent Pool patents. As is shown below, however, the patent law already provides a uniform standard by which to judge products that are "so similar" or "so close" to the patented technology that they infringe it. Since the patent law affords its own test for, and own protection against, meaningless or insubstantial changed, the covenant of good faith is preempted.

Commercial agreements, such as a royalty agreement, traditionally are the domain of state law. *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979). Under the doctrine of preemption, however, federal patent law will preempt state law where the state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'" under patent law. *Id*. (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)); *See University of Colorado Found. v. American Cyanimid*, 196 F.3d 1366, 1372 (1999).

The objectives of federal patent law are to "foster and reward invention, stimulate further innovation, and ensure full use of ideas in the public domain." *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 904 (9th Cir. 1992); *Arononson*, *supra*, at 262.  The stated goal of the doctrine of preemption is to ensure "national uniformity" in furtherance of such goals.  *Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 271 F.3d 1081, 1088 (Fed. Cir. 2001).  Thus, as the Ninth Circuit stated in *G.S. Rasmussen*, so long as "patent law *could* reach" an area of state law untouched by Congress, the state law is preempted.  *Rasmussen*, *supra*, at 904.

Under federal patent law, a patent is presumed to be valid merely by issuance.  35 U.S.C. § 282 (West 2001); *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1566-67 (Fed. Cir. 1983).  "[I]ncluded within the presumption of validity is a presumption of novelty, utility and non-obviousness . . . ." *Gentiluomo v. Brunswick Bowling & Billiards Corp.*, 1999 U.S. Dist. LEXIS 23188, *8 (N.D.N.Y. 1999), *aff'd in part, rev'd in part on other grounds*, 2002 U.S. App. LEXIS 11173 (Fed. Cir.), *cert. denied*, 2002 U.S. LEXIS 8718 (2002).  Patents, therefore, are presumed to improve on the prior technology.  *Medtronic*, *supra*, at 1566-67; *Gentiluomo*, *supra*, at *8.

In granting patent protection to inventors such as Plaintiff for the Bilclip Patent, Congress sought to promote the public good by rewarding inventors with a limited

monopoly.  *United States. v. Masonite Corp.*, 316 U.S. 265, 277-78 (1942).  The reward to patent holders, however, is plainly secondary to the public good of fostering invention and innovation, and is a means to an end.  *Id*. at 278.  The limited monopoly is narrowly restricted *to the invention* that qualifies for patent protection.  *Id*. at 277 (emphasis added).  "[Public policy] forbids the use of the patent to secure an exclusive right or limited monopoly not granted by the Patent Office and which it is contrary to public policy to grant."  *Morton Salt Co. v. G. S. Suppiger Co*., 314 U.S. 488, 492 (1942).

      Here, Plaintiff urges the Court to extend protection to him beyond the protection conferred by federal patent law under the state law doctrine of good faith.  According to Plaintiff, the doctrine of good faith and fair dealing requires Bilco to pay royalties on inventions that the Patent Pool owners did not even invent so long as such inventions are "similar" to Patent Pool patents.

      According to Plaintiff, the doctrine of good faith and fair dealing requires not only that his invention be protected by the patent law but also extends this protection to any technology used by Bilco that is "so similar" to Patent Pool technology.  Complaint, ¶ 32.  That the Patent Pool has a patent and that Bilco uses technology that is "so similar" to the technology of that patent, should be a sufficient basis to require continued payments under

the PPA.  Construed Plaintiff's way, Plaintiff can continue to receive payments both for patented technology and for any other technology that comes close.

Neither the doctrine of good faith and fair dealing, nor Plaintiff, however, offer any objective standard for determining when something is "so similar" to Patent Pool technology that a royalty is required.  As is shown below, the federal patent law under the doctrine of equivalents does offer such a standard.

There are two ways in which a product may infringe a patent:  (i) where the product literally infringes the patent, or (ii) where it infringes the patent under the doctrine of equivalents.  To establish literal infringement, every limitation set forth in the patent claim must exist in the accused product.  *London & Clemco Prods. Inc. v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538-39 (Fed. Cir. 1991).  If the accused product does not incorporate all of the patent claims, there can be no literal infringement.  *London, supra,* at 1538-39.

Under the doctrine of equivalents, however, the accused product still may infringe the patent where it performs substantially the same function in substantially the same way to obtain substantially the same result as the patented product.  *Warner-Jenkinson, Co., Inc v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39-40 (1997); *Graver Tank & Manuf. Co., Inc. v. Linde Air Prods. Co.,* 339 U.S. 605, 608 (1950).  In *Warner*, the Supreme Court explained:

00961.000/362180.1

> "The substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape."

*Warner*, *supra*, at 35 (quoting *Machine Co. v. Murphy*, 97 U.S. 120, 125 (1878)).  Where the accused product contains each limitation of the claim or its equivalent or employs a change so insubstantial as to result in "a fraud on the patent", an action will lie for infringement. *Slimfold Mfg. Co., Inc. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1457 (Fed. Cir. 1991).

The doctrine of equivalents is limited consistent with the federal policy underlying the patent laws.

> Intentional 'designing around' the claims of a patent is not by itself a wrong which must be compensated by invocation of the doctrine of equivalents.  Designing around patents is, in fact, one of the ways in which the patent system works to the advantage of the public in promoting process in the useful arts, its constitutional purpose. *Inherent in our claim-based patent system is also the principle that the protected invention is what the claims say it is, and thus that infringement can be avoided by avoiding the language of the claims*.

*Slimfold*, *supra*, at 1457 (emphasis added).  If the patent's limitation or equivalent is wholly absent from the accused product, the accused product, as a matter of law, cannot infringe the patent under the doctrine of equivalents:

> If an element is completely missing as it is here and the function of that element is not afforded by that which remains, then there can be no

13

> infringement no matter how immaterial from a practical operational sense the missing component may have been.

*J.N. Reed v. Parrack,* 276 F.2d 784, 788 (5th Cir. 1960); *Aktiebolag v. Andrx Pharm., Inc.,* 222 F. Supp. 2d 423, 504 (S.D.N.Y. 2002).

Federal patent law does not recognize the concept of "de minimis" modifications in determining whether a product infringes a patent. Ex. 2, Affidavit of Michael A. Cantor ¶ 9. Patent law affords its own test for, and its own protection against, modifications that are insubstantial. If a feature in the accused product performs substantially the same function, in substantially the same way to achieve substantially the same result, it is the equivalent of the patented feature and infringes the patent. Thus, if Bilco were to implement insubstantial modifications to products in the Patent Pool, Bilco would be using an equivalent of a Patent Pool patent, i.e., it would be using the patent. Under the PPA, Bilco then would be required to make royalty payments to Patent Pool owners.

Accordingly, since federal patent law "reaches" the concept embodied in the state law doctrine of good faith and fair dealing, it preempts the state law. Plaintiff, therefore, should be excluded from presenting any evidence or testimony regarding the implied covenant of good faith and fair dealing.

**C.   All Testimony Related to the Doctrine of Equivalents Offered by Plaintiff Must Be Excluded Because Plaintiff Did Not Disclose an Expert Witness Under FRCP 26(a)(2)(B)**

Under Federal Rule of Evidence ("FRE") 701, a lay witness is permitted to offer testimony regarding a subject within his personal knowledge and that is "not based on scientific, technical or other specialized knowledge within the scope of Rule 702." FRE 701(c). If the proffered testimony is properly the subject of expert testimony, then an expert witness must be timely disclosed under Federal Rule of Civil Procedure ("FRCP") 26(a)(2)(B). Failure timely to disclose an expert witness or the scope of the expert witness's expected testimony results in preclusion of such testimony at trial. FRCP 37(c)(1); *Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998).

A determination of infringement under the doctrine of equivalents requires a comparison of the claims and elements of the allegedly infringing device with the claims and elements of the device for which protection is sought. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd.*, 116 S. Ct. 1384 (1996). Accordingly, in order for Plaintiff to prove his breach of contract and CUTPA claims, he is required to provide testimony comparing his '300 Patent to the product that Bilco now sells. That testimony ultimately must offer an opinion as to whether the allegedly infringing devices in fact do infringe the prior art under the doctrine of equivalents.

Plaintiff certainly has personal knowledge of the claims and scope of his Bilclip Patent, having invented the device and obtained the patent. Accordingly, he should be permitted to testify under FRE 701 as to his own patent.

A *comparison* of patent claims, however, is inherently scientific and technical and requires expert testimony under FRE 702. As the Second Circuit noted in *A.O. Smith Corp.*:

> Judges are seldom masters of intricate mechanics or engineering. Accordingly, in patent cases, they must often rely on expert testimony to assist them in understanding the disclosure of a patent, the operation of allegedly infringing devices, and the teachings of prior art.

*N.V. Maatschappij Voor Industriele Waarden v. A.O. Smith Corp.*, 590 F.2d 415, 419 (2d Cir. 1978). In *Gart v. Logitech*, the defendant's witnesses were permitted to testify about their own patented technology but were precluded from offering a comparison of that technology to the device it allegedly infringed. The district court held:

> By contrast, when the declarants *compare* the handpieces to the limitations of the '165 Patent, they provide testimony that does require specialized knowledge. This they are not permitted to do as lay witnesses. Accordingly, the left columns of the charts . . . of Dr. Vanderheiden's declaration and . . . Mr. Volk's declaration, which describe the '165 Patent are inadmissible . . . .

*Gart v. Logitech*, 254 F. Supp.2d 1119, 1123 (C.D. Cal. 2003).

Thus, under the rationale of *Gart v. Logitech*, Plaintiff is precluded from offering a lay opinion as to whether Bilco's products infringe any Patent Pool patents under the doctrine

of equivalents. Rather, Plaintiff must offer expert testimony to compare the claims of the Bilclip Patent against the allegedly infringing Bilco product. Plaintiff has not disclosed any expert witness to offer an opinion on this subject under the mandatory disclosure requirement of FRCP 26(a)(2)(B). Accordingly, Plaintiff should be precluded from offering any evidence of infringement under the doctrine of equivalents. *See* FRE 37(c)(1).

        **Respectfully submitted,**
        **DEFENDANT**
        **THE BILCO COMPANY**

        By_____
            Peter K. Rydel
            Fed. I.D. # ct24793
            Reid and Riege, P.C.
            One Financial Plaza
            Hartford, CT 06103
            Tel: (860) 278-1150
            Fax: (860) 240-1002
            Its Attorneys

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 21st day of June 2004, a copy of the foregoing was sent by electronic mail and by first class mail, postage prepaid, to the following:

> *Attorney for Plaintiffs*
> Robert A. Harris, Esquire
> Zeldes, Needle & Cooper
> 1000 Lafayette Boulevard
> Bridgeport CT 06604

                                                                                                   _____
                                                                                                 Peter K. Rydel

00961.000/362180.1